# SETTLEMENT AND RELEASE OF CLAIMS AGREEMENT

This Settlement and Release of Claims Agreement ("**Agreement**") is entered into by and between **CITY HOSPITAL, INC. D/B/A BERKELEY MEDICAL CENTER**, a West Virginia Corporation ("**Employer**"), on behalf of itself, its parents, subsidiaries, and other corporate affiliates and its/each of their respective present and former employees, officers, directors, owners, shareholders, and agents, individually and in their official capacities (collectively referred to as the "**Employer Group**"), and **LYNNETTE MILLER** ("**Employee**") (Employer and Employee are collectively referred to as "**Parties**") as of the date signed by the Employee ("**Execution Date**").

WHEREAS, Employee has filed a civil action currently pending in the United States District Court for the Northern District of West Virginia styled as follows: *Lynnette Miller v. City Hospital, Inc. d/b/a Berkeley Medical Center, a subsidiary of West Virginia University Hospitals – East, Inc. d/b/a WV University Healthcare*, Civil Action No. 3:17-cv-39 (the "**Action**");

WHEREAS, Employer Group has denied every allegation of wrongdoing contained in the Action and in any other papers filed or served by or on behalf of Employee in this matter or before any court;

WHEREAS, the Court has made no findings as to the merits of the Action; and

WHEREAS, the Parties desire to resolve the Action without further litigation or adjudication;

NOW, THEREFORE, in consideration of the promises and obligations set forth in this Agreement, the Parties agree as follows:

1. <u>No Admission of Liability</u>. Nothing in this Agreement shall be construed to be an admission by Employer Group of any wrongdoing or noncompliance with any federal, state, city, or local rule, ordinance, constitution, statute, contract, public policy, wage and hour law, wage payment law, tort law, common law, or any other unlawful conduct, liability, wrongdoing, or breach of any duty whatsoever. Employer Group specifically disclaims and denies any wrongdoing or liability to Employee.

2. <u>Payment</u>. In consideration of Employee's execution of, non-revocation of, and compliance with this Agreement, including Employee's waiver and release of claims in Sections 3 and 4, Employer Group agrees to provide the following benefits to which Employee is not otherwise entitled provided that Employee has not revoked this Agreement in accordance with its terms:

    (a) $12,132.00, less all relevant taxes and other withholdings in full satisfaction of all claims Employee may have for alleged lost wages, lost back pay, front pay, or benefits to be paid to Employee. Employer Group shall issue a Form W-2 to Employee for this amount.

    (b) $5,000.00 in full satisfaction of all claims Employee may have for attorneys' fees and disbursements, to be paid directly to Employee's counsel, Barry P.

Beck, Esq. Employer Group shall issue a Form 1099-MISC to each of Employee and Employee's counsel for this amount.

The payments outlined in this Section 2 shall be paid in a lump sum and delivered to Barry P. Beck, Esq. after the Effective Date as defined in Section 4(g).

Notwithstanding anything to the contrary, Employer's obligations to make any payments under this Agreement are expressly conditioned on Employee's counsel delivering to Employer/filing with the court a signed Stipulation of Dismissal with Prejudice of the Action.

Employee agrees and acknowledges that Employer Group and its counsel have not made any representations to Employee regarding the tax consequences of any payments or amounts received by Employee pursuant to this Agreement.

Employee further agrees and acknowledges that Employee has been properly paid for all hours worked for Employer Group, that all salary, wages (other than the disputed overtime that is the subject of the Action), commissions, bonuses, and other compensation due to Employee have been paid, and that Employee is not owed anything else from Employer other than as provided for in this Agreement.

3. <u>General Release and Waiver of Claims</u>. In exchange for the consideration provided by Employer Group in this Agreement, Employee and Employee's heirs, executors, representatives, administrators, agents, and assigns (collectively the "**Releasors**") irrevocably and unconditionally fully and forever waive, release, and discharge Employer Group, including Employer's/each member of Employer Group's parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, shareholders, trustees, partners, and, in their corporate and individual capacities (collectively, the "**Released Parties**"), from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively, "**Claims**"), that Employee may have or has ever had against the Released Parties, or any of them, by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date of Employee's execution of this Agreement, including, but not limited to:

(a) any and all claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) (with respect to existing but not prospective claims), the Equal Pay Act (EPA), the Employee Retirement Income Security Act (ERISA) (with respect to unvested benefits), the Civil Rights Act of 1991, Section 1981 of the Civil Rights Act of 1866 (Section 1981), the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Genetic Information Nondiscrimination Act (GINA), the Immigration Reform and Control Act (IRCA), the Age Discrimination in Employment Act (ADEA), the Uniform Services Employment and Reemployment Rights Act (USERRA), all as amended, the West Virginia Human Rights Act (WVHRA), the West Virginia Wage Payment and Collection Act, the West Virginia Minimum Wage and Maximum Hours Standards law, and any other federal, state, local, or foreign law

(statutory, regulatory, or otherwise) that may be legally waived and released; however, the identification of specific statutes is for purposes of example only, and the omission of any specific statute or law shall not limit the scope of this general release in any manner;

(b) any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, sick pay, or severance;

(c) any and all claims arising under tort, contract, or quasi-contract law, including but not limited to claims of breach of an express or implied contract, tortious interference with a contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness, or any other harm, wrongful or retaliatory discharge, fraud, defamation, false imprisonment, and negligent or intentional infliction of emotional distress; and

(d) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees and costs, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, and penalties.

However, this general release and waiver of claims excludes, and Employee does not waive, release, or discharge: (i) any right to file an administrative charge or complaint with the Equal Employment Opportunity Commission or other administrative agency, although Employee waives any right to monetary relief related to such a charge or administrative complaint; and (ii) claims which cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation; (iii) any rights to vested benefits, such as pension or retirement benefits.

4. <u>Specific Release of ADEA and WVHRA Claims</u>. In further consideration of the payments and benefits provided to Employee in this Agreement, the Releasors hereby irrevocably and unconditionally waive, release, and discharge the Released Parties from any and all Claims, whether known or unknown, from the beginning of time through the date of Employee's execution of this Agreement, arising under the Age Discrimination in Employment Act (ADEA) and the West Virginia Human Rights Act (WVHRA), as amended, and their implementing regulations. By signing this Agreement, Employee hereby acknowledges and confirms that:

(a) Employee has read this Agreement in its entirety and understands all of its terms;

(b) by this Agreement, Employee has been advised in writing to consult with an attorney, she has been furnished with the toll free number of the West Virginia State Bar (1-800-642-3617 and 1-866-989-8227), and has consulted with counsel to the extent Employee has deemed necessary before signing this Agreement;

3

(c) Employee knowingly, freely, and voluntarily agrees to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release, and covenants contained in it

(d) Employee is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which Employee is otherwise entitled;

(e) Employee was given at least twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of Employee's choice, although Employee may sign it sooner if desired and changes to this Agreement, whether material or immaterial, do not restart the running of the 21-day period;

(f) Employee understands that Employee has seven (7) days from the date of signing this Agreement to revoke the release in this paragraph by delivering notice of revocation to Brian M. Peterson, Associate General Counsel, 1238 Suncrest Towne Centre Drive, Morgantown WV 26505, brian.peterson@wvumedicine.org, Fax: 304-598-9888, by email/fax/overnight delivery before the end of the seven-day period; and

(g) Employee understands that this Agreement shall not become effective until the eighth (8th) day after Employee executes, without revoking, this Agreement (the **"Effective Date"**) and that no payments due to Employee hereunder shall be made or begin before the Effective Date; and

(h) Employee understands that the release in this paragraph does not apply to rights and claims that may arise after the date on which Employee signs this Agreement.

5. <u>Withdrawal and Stipulation of Dismissal</u>. In exchange for the receipt of payments made to Employee and/or Employee's counsel pursuant to the terms of this Agreement and other good and valuable consideration, Employee shall withdraw/stipulate to dismissal of, in writing and with prejudice, the Action and all allegations, claims, charges, actions, complaints, lawsuits, appeals, and proceedings that Employee has instituted against Employer Group, including, but not limited to, the Action. Employee and/or Employee's counsel shall file or sign and deliver to Employer's counsel within 45 days of signing this Agreement, as a condition to Employee's entitlement to consideration under this Agreement, the Stipulation of Dismissal with Prejudice attached to this Agreement. Employer's obligations under this Agreement are expressly conditioned on the Court's approval of the settlement and order to dismiss the Action with prejudice.

6. <u>Waiver of Future Employment</u>. Employee waives all rights and claims to reinstatement as an employee/employment with Employer Group and agrees that Employee will not knowingly seek or accept future employment with Employer Group or Employer's parents, subsidiaries, and other corporate affiliates or with any successor or assign. Employee agrees that if Employer Group or Employer's parents, subsidiaries, and other corporate affiliates or any successor or assign declines to employ Employee, they shall not be liable for any damages.

7. <u>Return of Documents and Property</u>. Employee represents that Employee has returned/agrees to return all Employer Group property, identification cards, or badges, access

4

codes or devices, keys, laptops, computers, telephones, mobile phones, hand-held electronic devices, credit cards, electronically stored documents or files, physical files, and any other Employer Group property in Employee's possession within 30 days of the execution of this Agreement.

        8.        <u>Neutral References</u>. Employee agrees to direct all requests for references to Employer's Human Resources Department. In response to a request for a reference, Employer Group shall provide only Employee's dates of employment, job title and salary.

        9.        <u>Governing Law</u>. This Agreement and all matters arising out of or relating to this Agreement and Employee's employment by Employer, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of West Virginia (including its statutes of limitations) without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply.

        10.        <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between Employer Group and Employee relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

        11.        <u>Captions</u>. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

        12.        <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement, by facsimile, electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, has the same effect as delivery of an executed original of this Agreement.

        13.        <u>Section 409A</u>. This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986, as amended (Section 409A), or an exemption under Section 409A, and shall be construed and administered in accordance with Section 409A. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service, as a short-term deferral, or as a settlement payment pursuant to a bona fide legal dispute shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, any installment payments provided under this Agreement shall each be treated as a separate payment. To the extent required under Section 409A, any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, Employer Group makes no representations that the payments and benefits provided under this Agreement comply with Section 409A and in no event shall Employer Group be liable for all or any portion of any taxes, penalties, interest, or

other expenses that may be incurred by Employee on account of non-compliance with Section 409A.

14. <u>Acknowledgment of Full Understanding</u>. EMPLOYEE ACKNOWLEDGES AND AGREES THAT EMPLOYEE HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. EMPLOYEE ACKNOWLEDGES AND AGREES THAT EMPLOYEE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF EMPLOYEE'S CHOICE BEFORE SIGNING THIS AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES THAT EMPLOYEE'S SIGNATURE BELOW IS AN AGREEMENT TO RELEASE EMPLOYER GROUP FROM ANY AND ALL CLAIMS THAT CAN BE RELEASED AS A MATTER OF LAW.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Execution Date above.

| EMPLOYEE | EMPLOYER |
|---|---|
|  | CITY HOSPITAL, INC. d/b/a Berkeley Medical Center |
| Signature:_____ | By_____ |
| Print Name: _____ | Name: Anthony P. Zelenka |
| Date:_____ | Title: President and Chief Executive Officer |
|  | Date: _____ |

6